# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **RICHARD FISHER and** | ) | |
| **BETTIE FISHER,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **CIVIL ACTION** |
| **v.** | ) | |
| | ) | **No. 10-2547-KHV** |
| **HOUSEHOLD LIFE INSURANCE CO.,** | ) | |
| **et al.,** | ) | |
| **Defendants.** | ) | |
| | ) | |

## MEMORANDUM AND ORDER

Richard Fisher and Bettie Fisher bring this diversity action against Household Life Insurance Co. and Mortgage One Corporation d/b/a Household Finance Company Mortgage Corporation ("HFC"). Plaintiffs sue Household Life for breach of contract (Count I), failure to pay without just cause or excuse under K.S.A. § 40-256 or V.A.M.S. § 375.420 (Count IV) and fraud (Counts V, VI and VII). Plaintiffs sue HFC for negligent procurement of insurance (Count II), insurance malpractice (Count III) and fraud (Counts VI and VII). This matter comes before the Court on Defendants' Motion For Summary Judgment (Doc. #118) filed March 8, 2013. For reasons set forth below, the motion is sustained.

## Facts[1]

Richard Fisher and Bettie Fisher are married and live in Kansas City, Missouri. Household Life and HFC are Delaware corporations. In early May of 2006, Richard Fisher visited the HFC office at the Westfield Shopping Center in Kansas City, Kansas. He met with Barbara Oropeza, an

---

[1]     Many of the arguments in plaintiffs' brief rely on facts which are not set forth in their statement of facts. See, e.g., Doc. #123 at 28, 37. The Court does not consider such facts. See D. Kan. Rule 56.1.

account executive, to discuss refinancing the Fisher home with a second mortgage.

On May 23, 2006, plaintiffs went to the HFC office to sign refinancing documents. During the closing, Oropeza asked plaintiffs if they wanted to apply for credit disability insurance.[2] Fisher testified that he did not want disability insurance because he had always been healthy.[3] He said that Oropeza "kind of had to talk us into that," as follows:

> [S]he gave us an example of a couple that didn't take it and they got in – her husband got out of work or something like that, and then they needed it and they didn't have it so they ended up losing their home. So naturally once you hear that, you're going to be a little scared so we went ahead and took it. . . . She said that she would advise us to take this because in the event that I became disabled, it would make our mortgage payments for us.

Doc. #123-3 at 6. Oropeza told the Fishers that the insurance would cover Fisher if he became disabled, for as long as he was disabled. Doc. #123-3 at 14.[4] He decided to purchase the insurance, which was underwritten by Household Life.

Fisher did not instruct Oropeza to go into the marketplace to procure credit disability insurance for him. He never agreed for her to act as his insurance broker or agent, and he did not pay her a commission. Doc. #119-2 at 6. Oropeza never tried to obtain insurance from an entity not

---

[2] Oropeza testified that in gathering information for a loan, she would enter information into a computer. The computer system would prompt her on what questions to ask, including whether to ask applicants if they wanted to apply for credit disability insurance. Doc. #123-6 at 4. The job of account executives like Oropeza included selling such insurance. Doc. #123-7 at 3.

[3] Bettie Fisher testified that she was interested in obtaining disability insurance as soon as the topic came up. She also testified that the Fishers' decision to apply for credit disability insurance was voluntary. Doc. #119-5 at 3.

[4] Oropeza testified that she never told a customer that disability coverage would cover them for as long as they were disabled. See Doc. #119-3 at 6-7. For purposes of this motion, however, the Court accepts as true plaintiffs' testimony on this issue.

affiliated with HFC.

At the closing on May 23, 2006, Fisher executed an Application for Group Insurance for life and credit disability insurance underwritten by Household Life. <u>See</u> Doc. #119-8. Plaintiffs executed a Notice of Proposed Group Life Insurance and a Notice of Proposed Group Disability Insurance (the "Disability Notice"). The notices each state that "the amount of your insurance may not cover the full amount of your loan." <u>See</u> Doc. #119-9 at 2-3. The Disability Notice provides that "[u]pon approval, and within 30 days of the date of your application, subject to receipt of satisfactory evidence of insurability, a certificate of insurance will be delivered to you." <u>Id.</u> at 3. It also states that the policy has a "Critical Period of 24 months" and defines Critical Period as "the number of months benefits are payable during one period of disability." <u>Id.</u> It further states that "there is no limit to the number of Critical Periods for which benefits are payable." <u>Id.</u>

On May 23, 2006, Fisher executed the CE Optional Credit Insurance Disclosure (the "Disclosure"). <u>See</u> Doc. #19-10. The Disclosure states, "You understand that this is the only Credit Life, Disability [] Insurance we offer." <u>Id.</u> at 2. It further states as follows:

> Your certificate may provide a Critical Period disability benefit. The Critical Period is the number of months for which monthly benefits are payable during any period of disability. There is no limit to the number of Critical Periods for which benefits may be payable during the term of insurance. However, this is a limited benefit, which may not be enough to pay off your loan. (See your certificate for details).

<u>Id.</u>[5]

HFC provided underwriting and claims services to Household Life. In December of 2002, on behalf of HFC, Household Life and other subsidiaries and affiliates, Household International had

---

[5]    At the loan closing, plaintiffs completed a Customer Satisfaction Survey on which they indicated that they were satisfied with the overall loan process and would consider referring a friend.

entered into a consent judgment with state attorneys general including the Kansas and Missouri Attorneys General. Doc. #123-13. The Consent Judgment specifically addressed the disability insurance product and stated that defendant "shall establish procedures so that its employees fully explain credit coverage." Id. at 10.[6]

On June 13, 2006, Household Life mailed the Fishers an approval letter addressed to their residence in Kansas City, Missouri. It stated that "a" certificate was enclosed, but did not state whether it was the life insurance, the disability certificate or both. Doc. #119-13 at 4.[7] Fisher testified that he did not receive the certificate in June of 2006, but that he "possibly" received the approval letter. Doc. #123-3 at 8. He did not contact Household Life during 2006 to request a certificate.

Household Life has presented as an exhibit the certificate of group disability insurance which it would have mailed to plaintiffs in the ordinary course of business.[8] Doc. #119-13 at 9-12.

---

[6] Plaintiffs' statement of facts includes the statement that none of the Household Finance Company employees could explain the "Critical Period" language in the credit disability insurance documents but they do not provide a record citation in support of that claim.

[7] The Fishers testified that when they later requested a copy of this letter, the copy which defendants sent included only the life insurance certificate. Defendants' counsel later provided the Fishers a copy of the letter with both a life insurance certificate and a disability certificate.

[8] Plaintiffs have filed a motion in limine to prevent admission of the certificate. See Doc. #130. The parties argue at length about whether testimony of two of defendants' witnesses who testified regarding the way Household Life handles its processing is sufficient to provide a foundation for admission of the certificate. This dispute is ultimately immaterial. The Disability Notice, which Fisher executed, expressly disclosed that the policy had a "Critical Period" of 24 months. In this regard, it is important to note the import of plaintiffs' argument that they never received the certificate of insurance. K.S.A. § 16a-4-105 requires that within 30 days of the commencement of insurance, the creditor shall deliver to the consumer's address a certificate of insurance. Plaintiffs do not contend that their failure to receive the certificate policy vitiates
(continued...)

Beneath the box which sets out the Group Policy Limits, the certificate states, "**Critical Period: 24 months." Id. at 9. The certificate then includes a notice which states, in part, that "CRITICAL PERIOD DISABILITY PAYS A LIMITED BENEFIT WHICH MAY NOT COVER PAYMENT OF ALL OF THE UNPAID SCHEDULED INSTALLMENTS, EVEN IF THE LOAN INSTALLMENTS WERE PAID ON A CURRENT BASIS." Id. The certificate then states "READ YOUR CERTIFICATE CAREFULLY. It is evidence that we insure you. This Certificate is subject to the provisions of the Group Policy under which it is issued and contains all details about the insurance as it applies to you." Id. On the next page, the certificate defines "Critical Period" as "the number of months for which monthly benefits are payable during any period of disability. There is no limit to the number of Critical Periods for which benefits may be payable during the Term of Insurance." Id. at 10.

The Group Policy (the "Policy") provides that disability coverage is subject to a Critical Period, defined as "the number of months for which monthly benefits are payable during one period of disability," see Id. at 39, and that "[t]here is no limit to the number of Critical Periods for which benefits may be payable during the Debtor's Term of Insurance." Id. The Policy states that monthly benefits "will stop on the earliest of (i) the date you are no longer disabled, (ii) the date you have received the number of monthly benefits in the Critical Period, or (iii) the date this insurance ends,

---

[8](...continued)
coverage or otherwise defeats the contract of insurance. They merely argue that their failure to receive the certificate created ambiguity with regard to the terms of the contract, and constitutes evidence of fraud.

The only question here is whether the certificate is the "Policy" or if there is some way the Policy only became effective with receipt of the certificate. It is not necessary to show that plaintiffs had notice of the 24-month critical period. The governing contract is the Group Policy.

as explained under the Termination of Insurance on Insured Debtors provision." <u>Id.</u> at 40. The Policy further provides as follows:

> If payment of benefits ends because the Insured Debtor is no longer disabled or because the Insured Debtor has been paid the number of benefits in the Critical Period, insurance is not terminated and a new Critical Period will be covered as described in the Definitions Section of this policy. Successive periods of disability due to the same or related causes shall be considered one continuous period of disability unless the Insured Debtor has been actively employed full time for six consecutive months or, if not actively employed, has been engaged in normal activities for six consecutive months.

Id. Schedule A to the Policy lists the Critical Period of 24 months. <u>Id.</u> at 44.

In early December of 2007, Fisher became ill with scleroderma. <u>See</u> Doc. #119-2 at 12-13. He continued to make loan payments, although some payments were late. When Fisher was at an HFC branch, an employee reminded him that he had disability insurance and that he could submit a claim for benefits. In January of 2008, Fisher submitted a disability claim. Household Life accepted the claim and backdated Fisher's coverage to December 6, 2007.

On May 6, 2008, Household Life sent Fisher a letter which stated that "[d]ue to the nature of your disability, your claim has been placed on an automatic payment schedule. We will continue payments of $1,106.72 until January 12, 2009, when we will send you another claim form." Doc. #119-15 at 1. The letter further provided as follows:

> [W]e ask that you carefully re-read the certificate of insurance you received at the inception of your disability coverage. Among other things, your certificate of insurance explains:
>
> > 1. How long will benefits continue,
> > 2. When we will cease paying a monthly benefit to your creditor on your behalf.
> > 3. Why benefits paid may not completely pay off your loan.
>
> If you are unable to locate a copy of your certificate of insurance, your creditor's representative can provide a specimen copy for your

> review. If you have any questions after reviewing your certificate,
> feel free to contact one of our representatives.

Id.

On January 29, 2009, Household Life sent Fisher a letter which reminded him that disability payments were payable for a maximum of 24 months for any one episode of total and continuous disability and advised that benefit payments for that period would stop on December 6, 2009. Fisher testified that he did not receive this letter.

In January of 2010, the Fishers contacted Household Life to ask why it had stopped making mortgage payments. Household Life responded that it intended to make only 24 months of payments. The Fishers reviewed their mortgage and insurance documents and believed that nothing limited their mortgage disability payments to 24 months.

Household Life provided the Fishers "Continuance Claim" forms after they inquired why benefits had ended. On March 7, 2010, Household Life sent plaintiffs a letter which reiterated that benefits were payable for only 24 months and that no further benefits were payable for that period of disability. Doc. #119-18. It also advised that if plaintiffs elected to cancel the disability coverage within 60 days, it would reverse any disability premiums charged to their account after the date Household Life stopped paying their claim. After Fisher received the letter, he continued paying the premiums until some time in late 2010 because he had returned a continuation claim form to Household Life in February of 2010 and believed that benefits would resume. Doc. #119-2 at 15.

Plaintiffs filed suit, alleging that Household Life breached the disability insurance contract or, in the alternative, that HFC negligently procured the disability insurance or engaged in malpractice by failing to secure disability insurance which paid benefits until Fisher was no longer disabled or the 180 month term elapsed. Plaintiffs allege that Household Life failed to pay the

-7-

Fisher mortgage in bad faith and is liable for attorney fees under K.S.A. § 40-256 or V.A.M.S. § 375.420. Plaintiffs also allege three counts of fraud: (1) Household Life fraudulently misrepresented to Fisher that he need to complete a "continuance of claim form" to reinstate his benefits, with the intent to deceive the Fishers so that they would continue to make disability premium payments (Count V); (2) Household Life and HFC constructed a credit insurance disclosure form which intentionally misled the Fishers to believe that the disability policy covered 180 months, so they would purchase disability insurance (Count VI) and (3) Household Life and HFC falsely represented the insurance coverage by not providing a Certificate of Insurance and by oral and written misrepresentations (Count VII). Defendants contend they are entitled to summary judgment on each claim.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Vitkus v. Beatrice Co., 11 F.3d 1535, 1538-39 (10th Cir. 1993). A "genuine" factual dispute is one "on which the jury could reasonably find for the plaintiff," and requires more than a mere scintilla of evidence. Liberty Lobby, 477 U.S. at 252. A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." Id. at 248.

The moving party bears the initial burden of showing that there are no genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Justice v. Crown Cork & Seal Co., 527 F.3d 1080, 1085 (10th Cir. 2008). Once the moving party meets its burden, the burden

shifts to the nonmoving party to show that a genuine issue remains for trial with respect to the dispositive matters for which it carries the burden of proof.  Nat'l Am. Ins. Co. v. Am. Re-Ins. Co., 358 F.3d 736, 739 (10th Cir. 2004); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).  As to these matters, the nonmoving party may not rest on its pleadings but must set forth specific facts.  Fed. R. Civ. P. 56(e)(2); Matsushita, 475 U.S. at 586-87; Justice, 527 F.3d at 1085.  Conclusory allegations not supported by evidence are insufficient to establish a genuine issue of material fact.  Jarvis v. Potter, 500 F.3d 1113, 1120 (10th Cir. 2007); see Kidd v. Taos Ski Valley, Inc., 88 F.3d 848, 853 (10th Cir. 1996).

When applying this standard, the Court must view the factual record in the light most favorable to the party opposing the motion for summary judgment.  Duvall v. Ga.-Pac. Consumer Prods., L.P., 607 F.3d 1255, 1260 (10th Cir. 2010).  Summary judgment may be granted if the nonmoving party's evidence is merely colorable or is not significantly probative.  Liberty Lobby, 477 U.S. at 250-51.  Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law."  Id. at 251-52.

## Analysis

## I. Breach of Contract (Count I) And Statutory Fees, Kan. Stat. Ann. § 40-256 (Count IV)

### A.   Choice of Law

As an initial matter, the parties dispute whether Kansas or Missouri law governs construction of the insurance contract.  As a federal district court sitting in diversity, the Court applies the choice of law rules of the forum state to determine what state's substantive law applies.  Key Const., Inc. v. State Auto Prop. & Cas. Ins. Co., 551 F.Supp.2d 1266, 1269 (D. Kan. 2008) (citing Klaxon Co.

v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941)).  Under Kansas choice of law rules, the law of the forum applies unless the party seeking to apply the law of another jurisdiction shows that a different law governs.  Phil. Am. Life Ins. v. Raytheon Aircraft Co., 252 F.Supp.2d 1138, 1142 (D. Kan. 2003) (in case of doubt, "the law of the forum is preferred"); Sys. Design & Mgmt. Info. Inc. v. Kan. City Post Office Emps. Credit Union, 14 Kan. App.2d 266, 269 (1990).

In addressing choice-of-law issues, Kansas courts follow the Restatement (First) of Conflict of Laws (1934).  See Moses v. Halstead, 581 F.3d 1248, 1252 (10th Cir. 2009).  Here, the contract dispute goes to the substance of the obligation and the Court therefore must apply the law of the state where the parties made the contract.  Id.; see Simms v. Metro. Life Ins. Co., 9 Kan. App.2d 640, 642-43 (1984) (under Kansas choice of law rules, lex loci contractus applies to construction of provision regarding treatment coverage).  Under Kansas law, a contract is considered "made" when and where the last act necessary for its formation is done.  Hall-Kimbrell Env't Servs., Inc. v. Archdiocese of Detroit, 878 F. Supp. 1409, 1414 n.3 (D. Kan. 1995).[9]  In the context of insurance policies, the last act for formation of the contract is generally considered to be the "delivery of the policy (and perhaps the payment of a premium)."  Coffeyville Res. Refining & Mktg., LLC v. Liberty Surplus Ins. Corp., 714 F. Supp.2d 1119, 1145 (D. Kan. 2010).

---

[9]     Here, the insurance policy is a group policy.  Although courts have generally found that group life and health insurance policies are governed by the law where the master policy is delivered, this Court has found that this rule does not apply to other types of group policies.  See Am. Motorists Ins. Co. v. Gen. Host Corp., 919 F. Supp. 1506, 1510 (D. Kan. 1996).  Here, neither statement of fact includes the location where the master policy was delivered.  The master policy states that the Group Policy will be issued in the state of Michigan, but the Court's review of the record has not revealed where the group policy was delivered.

Defendants contend that the certificate was delivered in Missouri,[10] but they have not identified any material differences between Kansas and Missouri law. After reviewing and comparing applicable Kansas and Missouri law, the Court finds no substantive differences between the two in regard to this policy. The Court therefore applies Kansas law to plaintiffs' breach of contract claims. Excel Laminates, Inc. v. Lear Corp, No. 01-2172-GTV, 2003 WL 22466192, at *4 (D. Kan. Oct. 28, 2003) (citing Sys. Design & Mgmt. Info., Inc., 14 Kan. App.2d at 269) (constitutional limits not violated as long as Kansas has significant contact or significant aggregation of contacts to ensure choice of Kansas law is not arbitrary or unfair); see Layne Christensen Co. v. Zurich Canada., 30 Kan. App.2d 128, 144 (2002) (failure to present facts sufficient to determine where contract made may justify default to forum law).

**B.      Breach of Contract (Count I)[11]**

Household Life asserts that it is entitled to summary judgment on plaintiffs' breach of contract claim because the policy provided for only 24 months of coverage for a single continuous period of disability. Plaintiffs assert that the policy is ambiguous in light of language in the Disclosure and Certificate, and that construed in their favor, the policy provided up to 180 months of coverage for a single continuous period of disability.

The interpretation of an insurance policy, like other contracts, is a question of law. See

---

[10]      Here, the record reveals a question whether the certificate was ever delivered. Plaintiffs paid premiums in both Missouri and Kansas.

[11]      Under Kansas law, breach of contract requires the following elements: (1) a contract between the parties; (2) consideration; (3) plaintiffs' performance or willingness to perform in compliance with the contract; (4) defendant's breach; and (5) damage to plaintiffs on account of the breach. Britvic Soft Drinks, Ltd. v. ACSIS Techs., Inc., 265 F. Supp.2d 1179, 1187 (D. Kan. 2003).

AMCO Ins. Co. v. Beck, 261 Kan. 266, 269 (1996). The court must construe the contract as a whole, giving effect to every part, if it is reasonably possible to do so. See Arnold v. S.J.L. of Kan. Corp., 249 Kan. 746, 749 (1991); AJM Packaging Corp. v. Crossland Constr. Co., Inc., 962 S.W.2d 906, 912 (Mo. Ct. App. 1998). Courts generally give terms in an insurance policy their plain and ordinary meaning unless the parties have expressed a contrary intent. See Pink Cadillac Bar & Grill, Inc. v. U.S. Fid. & Guar. Co., 22 Kan. App.2d 944, 948 (1996); cf. Mo. Emp'rs Mut. Ins. Co. v. Nichols, 149 S.W.3d 617, 625 (Mo. App. W.D. 2004) (under Missouri law, court must find intent of parties through clear wording of contract). If the policy is not ambiguous, the Court must enforce it according to its terms. See Am. Media, Inc. v. Home Indem. Co., 232 Kan. 737, 740 (1983). The test to determine whether an insurance contract is ambiguous is not what the insurer intends the language to mean, but what a reasonably prudent insured would understand the language to mean. Farm Bureau Mut. Ins. Co. v. Winters, 248 Kan. 295, 300 (1991); cf. Seeck v. GEICO Gen. Ins. Co., 212 S.W.3d 129, 132-34 (Mo. 2007) (under Missouri law, courts interpret insurance contract as it would be read by ordinary person). To be ambiguous, a contract must contain provisions or language of doubtful or conflicting meaning, as gleaned from a natural and reasonable interpretation of its language. Farm Bureau Mut. Ins. Co. v. Old Hickory Cas. Ins. Co., 248 Kan. 657, 659 (1991). As the insureds, plaintiffs have the burden to prove coverage. See Shelter Mut. Ins. Co. v. Williams, 248 Kan. 17, 29-30 (1991).

Plaintiffs first assert that the Disclosure statement that "Your certificate *may* provide a Critical Period disability benefit," is ambiguous in light of the fact that they did not receive a

certificate.[12]  They argue that a reasonable insured would understand that there was no Critical

Period, and that the Court must construe the ambiguity in their favor.  Household Life correctly

points out, however, that the Disclosure is not the insurance contract and does not render the contract

ambiguous.  The Court agrees that an ordinary person would not conclude from the Disclosure that

no Critical Period applied if he or she did not receive a Certificate.[13]

Second, plaintiffs argue that the contract is ambiguous because the Certificate sets out a

Critical Period of 24 months, while the Disclosure states that "[y]our certificate *may* provide a

Critical Period disability benefit."  They argue that the two documents together create an "ambiguity

as to whether the 24 month limitation, in fact, exists."  The Certificate, however, clearly identifies

---

[12]       K. S. A. § 16a-4-105 provides as follows:

If a creditor agrees with a consumer to provide insurance
(1) the insurance shall be evidenced by an individual policy or certificate of
insurance delivered to the consumer, or sent to him at his address as stated by him,
within thirty (30) days after the term of the insurance commences under the
agreement between the creditor and consumer; or
(2) the creditor shall promptly notify the consumer of any failure or delay in
providing the insurance.

When mail is properly addressed, stamped and deposited in the mail system, there is a presumption
it was received by the party to whom it was sent.  See, e.g., Legille v. Dann, 544 F.2d 1, 5 (D.C. Cir.
1976).  Proper mailing, however, must be proved before the presumption is activated, and proof of
custom of mailing is sufficient to carry the burden of proper mailing and proof of customary and
usual computer procedures is sufficient to show adherence to a usual and customary procedure.  In
re Am. Props., Ins., 30 F.R. 235, 237-38 (Bktcy. Kan. 1983) (citing Gulf Coast Inv. Corp. v.
Secretary of H.U.D., 509 F.Supp. 1321 (E.D.La. 1980).  In any event, here, that factual dispute is
not material to the meaning of the Group Policy.

[13]       As Household Insurance points out, the Disability Notice provides that "subject to
receipt of satisfactory evidence of insurability, a certificate of insurance will be delivered to you."
The Disability Notice (which Fisher executed) further defines Critical Period and designates it as
24 months.  Id. at ¶ 19.  A reasonable person would not read the disclosure and the Disability Notice
and reasonably believe that no Certificate should be reviewed to determine the Critical Period.

-13-

a 24 month Critical Period, and it is not ambiguous.

Third, plaintiffs assert that the contract is ambiguous based on the Disclosure language that "[t]here is no limit to the number of Critical Periods for which benefits may be payable during the term of insurance." They argue that this statement would lead a reasonable insured to think that the Critical Period of 24 months is renewable anytime within the 180-month policy term. The Policy, however, provides that coverage is subject to a Critical Period, defined as "the number of months for which monthly benefits are payable during one period of disability," and that benefits "will stop on . . . . the date the Insured Debtor receives the number of monthly benefits in the Critical Period." The Policy further provides that "[s]uccessive periods of disability due to the same or related causes shall be considered one continuous period of disability unless the Insured Debtor has been actively employed full time for six consecutive months or, if not actively employed, has been engaged in normal activities for six consecutive months." SOF ¶ 48.[14] Plaintiffs strain to read the Critical Period language out of the Policy. Here, if multiple Critical Periods for the same disability could be renewed consecutively, the term "Critical Period" would have no meaning.[15]

The policy is not ambiguous. It does not provide for more than 24 months of disability coverage for a single disability without an intervening period of work or other activity. Household Life is therefore entitled to summary judgment on plaintiffs' claim for breach of contract.

---

[14]    Plaintiffs assert that none of the documents they received at closing expressly state that each two year disability period must be caused by a new and different disability or must be separated by six months of work or activity. The Disability Notice which Fisher executed plainly states, however, that the "Critical Period" of 24 months, "is the number of months benefits are payable during one period of disability."

[15]    This was not a case in which the certificate contained provisions contrary to the policy. The language of the certificate did not mislead the insured; rather, it directed the insured to the provisions of the policy which contained specific statements of benefits.

### C. Statutory Fees And Costs (Count IV)

Because plaintiffs' claim for breach of contract fails, Household Life is also entitled to summary judgment on plaintiffs' claim for fees and costs under K.S.A. § 40-256 and V.A.M.S. § 375.420.

## II. Negligence Claims

### A. Choice Of Law

Defendants assert that under the rule of lex loci delicti, Missouri law applies to plaintiffs' tort claims, because any injury occurred at plaintiffs' residence in Missouri. Schmitz v. Davis, No. 10-CV-4011-SAC, 2010 WL 3861843, *3 (D. Kan. Sept. 23, 2010). Plaintiffs appear to concede that Missouri law controls these claims, and the Court applies Missouri law to the tort claims.[16]

### B. Negligence (Count II) And Professional Negligence/Malpractice (Count III)

Plaintiffs allege that HFC was negligent or committed malpractice when it failed to procure disability insurance to cover mortgage payments for as long as Fisher was disabled during the 180 month term of the policy. HFC asserts that it is entitled to summary judgment because it owed plaintiffs no such duty.

To state a claim for negligence, plaintiffs must show each of the following elements: (1) defendant had a duty to protect plaintiffs from injury; (2) defendant breached that duty; and (3) the breach was the proximate cause of plaintiffs' injury. Lonergan v. Bank of Am., N.A., No. 12-CV-04226-NKL, 2013 WL 176024, *8 n.3 (W.D. Mo. Jan. 16 2013).

---

[16]   In any event, it appears that the basic analysis and result would be the same under Kansas law. The Court notes that under Kansas law, allegations of bad faith or negligence in handling insurance *claims* arise under contract law. Payless ShoeSource, Inc. v. The Travelers Cos., Inc., 569 F. Supp.2d 1189, 1195 (D. Kan. 2008).

Under Missouri law, an insurance agent or broker who undertakes to procure insurance for another for compensation owes a duty of reasonable skill, care and diligence in obtaining the requested insurance. <u>Zubres Radiology v. Providers Ins. Consultants</u>, 276 S.W.3d 335, 341 (Mo. Ct. App. 2009) (emphasis added). If the insurance agent or broker cannot or does not obtain the requested insurance, the agent or broker has a duty to timely notify the customer. <u>Id.</u> Under Missouri law, an insurance agent does not have a duty to advise customers as to their particular insurance needs. <u>Boycom Cable Vision, Inc. v. Howe</u>, No. 04-CV-38-LMB, 2005 WL 2593177, at *5 (E.D. Mo. Oct. 13, 2005).

To succeed on their claim of negligent failure to procure insurance, plaintiffs must show that (1) for compensation, an agent agreed to procure insurance; (2) the agent failed to procure the agreed-upon insurance; (3) in doing so, the agent failed to exercise reasonable care; and (4) resulting damage. <u>Parshall v. Buetzer</u>, 121 S.W.3d 548, 554 (Mo. Ct. App. 2003). HFC argues that plaintiffs cannot establish any of these elements. Specifically, HFC argues that plaintiffs cannot show (1) that HFC was their agent or (2) that HFC owed them a duty to procure a specific type of credit disability insurance coverage. In the alternative, HFC asserts that plaintiffs cannot make a case without expert testimony that HFC breached the applicable standard of care. Plaintiffs respond that HFC was a dual agent for them and Household Life, and that it had a duty to procure the disability insurance that Oropeza described, <u>e.g.</u>, for coverage for as long as Fisher might be disabled, up to 180 months.

Even viewed in a light most favorable to plaintiffs, the record does not support a finding that HFC and Oropeza were plaintiffs' agents to procure a specific type of disability coverage. Fisher signed the Disclosure, which states, in bold type on the very first page that "this is the only Credit Life, Disability, and Involuntary Unemployment Insurance we offer." Oropeza did not sell other

insurance products, and Fisher did not ask her to go into the marketplace to procure credit disability insurance for him. He did not solicit Oropeza to act as his insurance agent and he did not pay her to get insurance for him. The record contains no evidence that plaintiffs asked HFC to secure continuous coverage for 180 months. In short, plaintiffs have not established a genuine issue of material fact whether HFC and Oropeza were their agents for the purpose of procuring credit disability insurance coverage for up to 180 months. The Court finds that HFC is entitled to summary judgment on the negligence claims.

## III. Fraud Claims (Counts V, VI, and VII)

### A. Choice of Law

Defendants assert that under the rule of lex loci delicti, Missouri law applies to plaintiffs' fraud claims because any injury occurred at plaintiffs' residence in Missouri. Schmitz, No. 10-CV-4011-SAC, 2010 WL 3861843, at *3. Plaintiffs appear to concede that Missouri law controls these claims, and the Court applies Missouri law to the fraud claims.[17]

Plaintiffs bring three fraud claims, as follows (1) in 2010, Household Life told plaintiffs that they were processing Mr. Fisher's disability claim in the same time frame that it informed the Missouri Department of Insurance that the policy term had expired and no further benefits were available (Count V); (2) in 2006, Household Life and HFC fraudulently represented that the disability coverage lasted for 180 months by providing plaintiffs with the Disclosure but not the Certificate (Count VI); and (3) in 2006, Household Life and HFC falsely represented the coverage by not providing the Certificate (Count VII).

---

[17]      In any event, it appears that the basic analysis and result would be the same under Kansas law.

Under Missouri law, a fraud claim requires clear and convincing evidence of nine separate elements: (1) a representation, (2) its falsity, (3) its materiality, (4) the speaker's knowledge of its falsity or his ignorance of its truth, (5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated, (6) the hearer's ignorance of the falsity of the representation, (7) the hearer's reliance on the representation being true, (8) the right to rely thereon, and (9) the hearer's consequent and proximately caused injury. Woods v. Wills, 400 F. Supp.2d 1145, 1185 (E.D. Mo. 2005); see also Cordry v. Vanderbilt Mortg. & Fin., Inc., 445 F.3d 1106, 1111 (8th Cir. 2006) (combining elements (1) and (2)).[18]  When fraud is alleged the burden of proof as to each element falls on the party asserting the fraud and fraud is never presumed.  Woods, 400 F. Supp.2d at 1185.

**B.        Fraud Relating To Household Life's Alleged 2010 Misrepresentations (Count V)**

In Count V, plaintiffs allege that Household Life prematurely discontinued paying disability benefits (the Fisher's mortgage payments), told plaintiffs to complete a continuance form and then falsely represented that it was processing the request to continue disability payments with the intent to induce plaintiffs to continue paying disability premiums.  Plaintiffs allege that in reliance on the misrepresentation that Household Life was reviewing the claim, they continued to pay disability insurance premiums and Bettie Fisher did not go back to work.

Defendants assert that they are entitled to summary judgment because plaintiffs have not

---

[18]        In Kansas, fraudulent misrepresentation involves an untrue statement of material fact, known to be untrue by the party making it, made with the intent to deceive or with reckless disregard for the truth, upon which another party justifiably relies to his or her detriment.  Hall v. Associated Int'l. Ins. Co., No. 11-CV-4013, 2011 WL 3299104, at *6 (D. Kan. Aug. 1, 2011); O'Loughlin v. The Pritchard Corp., 972 F. Supp. 1352, 1370 (D. Kan. 1997).  Plaintiffs must show these elements by clear and convincing evidence.  O'Loughlin, 972 F. Supp. at 1370.

pointed to clear and convincing evidence (1) that Household Life made a false, material statement (2) with intent to defraud or (3) that plaintiffs relied on the statement by continuing to pay disability premiums.

As to plaintiffs' allegation that Household Life misrepresented to Fisher that his claim was under review, defendants note that their representation was not false because Household Life was reviewing additional claims paperwork to determine whether Fisher was suffering from the same continuous disability.  Plaintiffs respond that at the same time Household Life was telling them that the claim was under review, it was telling the Missouri Insurance Department that it had paid all benefits due.  This does not appear dispositive, but plaintiffs have not produced evidence that Household Life represented that it would consider new claim forms with intent to deceive plaintiffs.  The fact that defendants would profit from premiums does not allow a jury to infer that defendants had fraudulent intent.  See Waddell & Reed Fin., Inc. v. Torchmark Corp., 223 F.R.D. 566, 606 (D. Kan. 2004) (profit motive not sufficient evidence of fraudulent intent); see Woods v. Wills, 400 F. Supp.2d 1145, 1185 (E.D. Mo. 2005) (fraud never presumed).  The Court therefore finds that defendants are entitled to summary judgment on Count V.

### C.    Fraud Relating To HFC's And Household Life's Representation Of The Disability Coverage Via The Disclosure In 2006 (Count VI)

In Count VI plaintiffs allege that in 2006, to induce them to buy insurance, defendants fraudulently represented that disability coverage would last for 180 months.  Specifically, plaintiffs allege that defendants provided them a Disclosure which stated that the "insurance term" was 180 months and that "your certificate may provide a Critical Period disability benefit," but then did not provide the Certificate which defined the Critical Period as 24 months.  Plaintiffs assert that they relied upon the Disclosure in deciding to buy the policy because they understood that Fisher would

be covered for 180 months and that the policy authorized an unlimited number of consecutive "Critical Periods." Defendants assert that they are entitled to summary judgment because plaintiffs cannot show a material misrepresentation or reasonable reliance on the alleged misrepresentation.

Missouri courts apply the same elements in cases of fraudulent inducement as in cases of fraudulent misrepresentation. See, e.g., Citizens Bank of Appleton City v. Shapeler, 869 S.W.2d 120, 126 (Mo. Ct. App. 1993); Ariel Preferred Retail Group, LLC v. CWCapital Asset Mgmt., No. 10-CV-623-SNLJ, 2011 WL 4501049, at *5 (E.D. Mo. Sept. 28, 2011) (fraudulent inducement is subset of fraudulent misrepresentation).

Defendants first assert that the statements in the Disclosure are true; plaintiffs had an insurance coverage term of 180 months and the Policy does offer unlimited "Critical Periods": the Disability Notice identifies a Critical Period of 24 months and defines the term as "the number of months benefits are payable during one period of disability." They argue that this language is consistent with the Policy, which states: "Successive periods of disability due to the same or related causes shall be considered one continuous period of disability unless the Insured Debtor has been actively employed full time for six consecutive months or, if not actively employed, has been engaged in normal activities for six consecutive months." The Court agrees that read as a whole, the Notice and Disclosure do not support a finding that defendants made a material misrepresentation. Rather, the documents identified the Critical Period, stated its length, defined it and referred plaintiffs to the Certificate for additional details.

Defendants also assert that plaintiffs cannot demonstrate that in deciding to purchase the policy, it was reasonable for them to rely on coverage of 180 months for a single disability or on an unlimited number of critical periods for the same disability, especially in view of the terms of the

Disclosure and the Disability Notice which Fisher executed. The Court agrees that as a matter of law such reliance was unreasonable. See, e.g., Pace v. Wells Fargo Bank, N.A., No. 11-CV-489-CAS, 2012 WL 3705088, at *11 (W.D. Mo. Aug. 27, 2012) (to establish reasonable reliance, plaintiffs must have been justified in relying on alleged misrepresentation) (citing Trimble v. Pracna, 167 S.W.3d 706, 712 (Mo. 2005) (reversing judgment for fraud where plaintiff did not establish essential element of reliance). Defendants are therefore entitled to summary judgment on the fraud claim set out in Count VI.

**D.     Fraud Claim Relating To HFC's And Household Life's Alleged False Representation Of Coverage By Not Providing A Copy Of The Certificate (Count VII).**

In Count VII, plaintiffs allege that Household Life and HFC fraudulently represented coverage by not providing them with a copy of the Certificate and by orally misrepresenting the nature of the coverage at the time of contracting, thereby inducing plaintiffs to purchase the credit disability insurance. Count VII is very similar to Count VI, except that it alleges that plaintiffs relied in part on oral misrepresentations. Defendants assert, and the Court agrees, that plaintiffs cannot point to evidence that they reasonably relied on any oral misrepresentation. Defendants are therefore entitled to summary judgment on the fraud claim set out in Count VII.

**IT IS THEREFORE ORDERED** that Defendants' Motion For Summary Judgment (Doc. #118) filed March 8, 2013, be and hereby is **SUSTAINED**.

Dated this 19th day of July, 2013, at Kansas City, Kansas.

s/ Kathryn H. Vratil
Kathryn H. Vratil
United States District Judge

-21-